Robinson Electronic Supervisory Co., Inc. *v.* Johnson, Appellant.

Argued May 26, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Francis E. Marshall,* with him *Davis, Marshall & Crumlish,* for appellants.

*Franklin Poul,* with him *Abraham L. Freedman, Louis J. Goffman,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE BELL, September 29, 1959:

Defendants appeal from a preliminary decree which restrained them from certain business activities in competition with plaintiff for a period of one year from the date of severance of employment of defendants Johnson with plaintiff, or in the alternative, until certain contracts of prospective customers of plaintiff had expired and new contracts had been entered into by such prospective customers, *whichever time period proved to be the shorter.*

We quote with approval the following excerpts from the comprehensive opinion of the Chancellor, Judge ALEXANDER:

"Plaintiff brought this action in equity against Charles S. Johnson, Sr. and Charles S. Johnson, Jr., former employees of plaintiff, and Edward J. Lavino, II, who has considered forming a business organization with defendants Johnson subsequent to their severance of employment with plaintiff corporation on March 13, 1959. In this matter, defendant Lavino is in the position of a businessman and business financier. The business which [Lavino] has considered forming with defendants Johnson would be in direct competition with plaintiff.

"Plaintiff operates a central station alarm service, a security service for banking and business establishments. Various electronic security devices are installed on the premises of the customer and connected to the central station, or 'nerve center' of the system, which is manned and maintained by plaintiff. . . . The service provides protective security for fire, burglary and other intrusions of customers' premises. . . .

"The significant business function of defendants Johnson [during their employment tenure with plaintiff] was to gather, prepare and analyze all necessary information about customers' business establishments in order to plan the protection of customers' premises by the central alarm service and to prepare and submit bids to customers for this service. Once bids were accepted, they supervised its installation and maintenance.

"The record establishes that defendants Johnson, through their employment relationship with plaintiff, became familiar with the special problems and details of many potential customers' business establishments in the Philadelphia area. They were specifically hired for this purpose. The information which had been compiled by Mr. Johnson, Sr. and through his direction was the sole basis of plaintiff's bid, submitted to the Girard Trust-Corn Exchange Bank following his termination of employment. . . .

"The 286 potential customers [as to which the injunction applies], although many are important prospects, are but a small percentage of the 6000 potential customers estimated by Mr. Johnson, Sr. to be present in the Philadelphia area. . . .

"In the case at bar, defendants Johnson were in 'key' positions to gather technical data in regard to prospective customers of plaintiff. Their duties re-

quired them to be fully familiar with security problems, costs and basis of bids to be submitted to potential customers. They plan to operate a competitive business in the same city and Mr. Johnson, Sr. testified that he would solicit the business of the Girard Bank, if the opportunity arose. The use of the special knowledge and customer data obtained by defendants, Johnson, as a necessary result of their employment, cannot, under the circumstances and facts of this case, be fairly permitted to be used in competition with plaintiff for the time period stated in the Decree. . . .

"Mr. Lavino would necessarily depend upon the Johnsons for any information in regard to those potential customers of plaintiff included in the Decree. Therefore, in light of defendants' business intentions, he must necessarily be included [in the injunctive decree]. . . ."

The basis for the decision of the Court below is that an employer is entitled to protection against competitive use of information acquired by employees as a result of positions of trust: *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A. 2d 838; *Elliott Co. v. Skillcrafters, Inc.*, 271 Pa. 185, 114 A. 488; *Macbeth-Evans Glass Company v. Schnelbach*, 239 Pa. 76, 86 A. 688; *American Ice Company v. Royal Petroleum Corp.*, 261 F. 2d 365.

*Macbeth-Evans Glass Company v. Schnelbach*, supra, rules the instant case. In that case the Court said: "It may now be accepted as settled law, under the authority of English and American cases, that courts of equity if the facts warrant will restrain an employee from making disclosure or use of trade secrets communicated to him in course of a confidential employment. The character of the secrets, if they be peculiar and important to the business, is not material. They may be secrets of trade, or secrets of title,

or secret processes of manufacture, or any other secrets important to the business of the employer. They, however, must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged, nor even the same secrets as those sought to be protected, if they be discovered by the independent investigation of outside parties. The duty of the servant not to disclose the secrets of the master may arise from an express contract, or it may be implied from their confidential relations. It is likewise true that other persons who induce such disclosures by an employee, knowing of his contract not to disclose, or knowing that the disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making use of the information so obtained. Where confidence is reposed, and the employee by reason of the confidential relation has acquired knowledge of trade secrets, he will not be permitted to make disclosure of those secrets to others to the prejudice of his employer."

*Morgan's Home Equipment Corp. v. Martucci,* 390 Pa., supra, in principle likewise supports the Chancellor's decree. While that case contained a restrictive covenant not present in the instant case, the Court's opinion is equally applicable to the instant case. The Court said (pages 623, 624, 625, and 626) : "In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent a material investment of employers' time and money. This information is highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of

unfair trade practices. In Macbeth-Evans Glass Co. v. Schnelbach, 239 Pa. . . . [the Court quoted at length from that opinion, and said:]

" 'Where confidence is reposed, and the employe by reason of the confidential relation has acquired knowledge of trade secrets, he will not be permitted to make disclosure of those secrets to others to the prejudice of his employer.' . . .

"We agree that confidential customer data are entitled to protection as a trade secret within the meaning of the Macbeth-Evans rule. . . .

". . . We hold, therefore, that independent of the covenants executed between Morgan and its former employes, the lower court properly directed Martucci, Dan Spiller, and Morris Spiller to account for all profits obtained from the disclosure of confidential customer information. Macbeth-Evans Glass Co. v. Schnelbach, supra; Belmont Laboratories, Inc. v. Heist, 300 Pa. 542, 151 Atl. 15 (1930).

"The vice of an employe's divulgence of confidential information is that the rival businessman who receives the data is enabled thereby to compete unfairly with the former employer. But it is immaterial to the employer whether unfair competition comes at the hands of a third party or directly through an employe. For this reason the law will also prevent an employe from using customer contacts as well as confidential customer information to his own advantage by soliciting the customers of his former employer. Cf. Belmont Laboratories, Inc. v. Heist, supra, 300 Pa. at 553."

It is clear, on the present record, that defendants Johnson, Sr. and Jr. engaged in a course of conduct which was harmful, prejudicial and very unfair to plaintiff and its business interests and undoubtedly amounted to and constituted unfair competition, and that Lavino unwittingly but illegally sought to take advantage of Johnsons' secret information.

In *Northampton Area Joint School Authority v. Building & C. T. Council,* 396 Pa. 565, 152 A. 2d 688, the Court said (page 571) : "We have long and strictly adhered to the rule clearly set forth in Lindenfelser v. Lindenfelser, 385 Pa. 342, 343, 123 A. 2d 626: 'Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable: . . .' [citing numerous cases]."

Decree affirmed; appellants to pay the costs.