In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3412

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

BONNIE L. ROTH, *et al.*,

*Defendants-Appellants*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3839—**Ronald A. Guzmán**, *Judge*.

———————

ARGUED APRIL 6, 2007—DECIDED MAY 7, 2007

———————

Before POSNER, FLAUM, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendants—insurance agents who sold a variety of insurance products on behalf of the plaintiff, their principal—appeal from the grant, after an evidentiary hearing conducted by a magistrate judge, of a preliminary injunction. After being terminated by the plaintiff, the defendants had begun soliciting its customers, precipitating this suit, which charges the defendants with breaking their agency contract and stealing trade secrets. The appeal challenges so much of the injunction as bars the defendants "from using for any reason any information

downloaded from [the plaintiff's] database, including the names contained in Exhibit 34," and "from servicing [the plaintiff's] customers." The issues presented by the appeal are governed by Wisconsin law.

An addendum to the agency contract required the agent "to submit all new business and changes through the system as directed by the Company." By "system" the company meant its digitized database of customer information. The addendum provided "that software and database provided contains confidential, proprietary and trade secret information and that the agent and its employees will not use nor disclose to third parties such information unless in the ordinary course of the agent's business with the Company." The agent had access only to the information in the database that concerned the customers whom he served. It might be customer information originated by the agent or information furnished to it by the company when another agent resigned and his customers had therefore to be reassigned. Some 2,000 policies were reassigned to the defendants in the course of their agency relationship with the plaintiff.

Exhibit 34 was a customer list that the defendants maintained separately from the plaintiff's database and used as a source of names for customer solicitations that they conducted after being terminated by the plaintiff. The list contained 1,847 names, of which the vast majority were also in the plaintiff's database. It is highly likely, though not certain, that most of those were names of customers in the group of 2,000 customers that the plaintiff had assigned to the defendants. The plaintiff points out that the contract forbade the defendants to use any name in the database, whatever the source of the name.

The contract can't *really* mean that agents are forbidden to solicit anyone whose name happens to appear in the database. They are not forbidden to solicit customers of the company's other agents, for having no access to the names of customers in the company's database they would not be free riding on the company's resources by soliciting such customers without having learned their names, or other information about them, from the database. It would be sheer coincidence if they happened to solicit a customer whose name was in the database.

But once agents enter customer information in the database, the information becomes the exclusive property of the plaintiff, or at least exclusive as against the agent. The information, insofar as it had been developed by the agent rather than supplied to him by the plaintiff, would be his trade secret initially—but only until he uploaded the information into the plaintiff's database, at which point it would become the plaintiff's trade secret. (This provision of the contract is a "grantback" clause, common in patent and other intellectual-property settings.) Trade secrets can be sold, see, e.g., *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 609 (7th Cir. 2001) (Wisconsin law); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 103 (2d Cir. 1998); *Painton & Co. v. Bourns, Inc.*, 442 F.2d 216, 225 (2d Cir. 1971) (Friendly, J.) ("the validity of agreements for the sale or license of trade secrets has been upheld for generations"), and once sold (rather than just licensed) can no longer be used by the seller. *Hooker Chemical & Plastics Corp. v. United States*, 591 F.2d 652, 660 (Ct. Cl. 1979) (per curiam); *Belmont Laboratories, Inc. v. Heist*, 151 Atl. 15, 18 (Pa. 1930).

There is nothing unconscionable, or even one-sided, about the arrangement that we've just sketched. The agents

benefited from being able to use the plaintiff's database, as well as from receiving customers (the 2,000) from the plaintiff; in exchange they gave the plaintiff the right to keep, after termination of the agency relationship, any customer information that they'd acquired in the course of the relationship. Apparently they had, or at least think they had, some legal protection against termination designed to appropriate the customer information that they uploaded into the database, for they have sued the plaintiff for wrongful termination in a separate action pending in the district court.

But we have merely assumed up to now that any customer information in the plaintiff's database is a trade secret (originally the defendants' except for the names of customers furnished to them by the plaintiff). It would not be if it "was known outside the [employer's] business and the list could be readily reproduced [and] the information was available to all the employees of the firm, and much of the information that was available was far more pertinent to [the business] than the skeletal customer list." *Gary Van Zeeland Talent, Inc. v. Sandas*, 267 N.W.2d 242, 249 (Wis. 1978). But does it matter whether there was a trade secret? The addendum to the agency contract forbids the defendants to use the information "unless in the ordinary course of [their] business with the [plaintiff]," and a contract forbidding disclosure of customer information is enforceable—but only if the contractual prohibition is reasonable in time and scope and, specifically, only if its duration is limited. E.g., *id*. at 249-51; *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803-04 (7th Cir. 1993) (Wisconsin law); *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1201-02 (7th Cir. 1987); *Howard Schultz & Associates of the Southeast, Inc. v. Broniec*, 236

S.E.2d 265, 269-70 (Ga. 1977). Because such a prohibition limits competition, courts view it with some suspicion. Treating customer information as a trade secret limits competition as well, but such information is given enhanced legal protection as a trade secret only if there is some indication that the information has value apart from its value in limiting competition—that it represents an investment on the part of the firm seeking to protect it. *B.C. Ziegler & Co. v. Ehren*, 414 N.W.2d 48, 51-53 (Wis. App. 1987); *Robinson Electronic Supervisory Co. v. Johnson*, 154 A.2d 494, 496 (Pa. 1959); *Readylink Healthcare v. Cotton*, 24 Cal. Rptr. 3d 720, 729-30 (App. 2005); *Thompson v. Impaxx, Inc.*, 7 Cal. Rptr. 3d 427, 432 n. 3 (App. 2003); *Cincinnati Tool Steel Co. v. Breed*, 482 N.E.2d 170, 176-78 (Ill. App. 1985).

The nondisclosure provision contains no limitation of time; although it says it will continue in force only until the agency is terminated, the defendants do not argue that it terminates then, and it would not be a good argument; the agency contract is terminable by either party at will, and the plaintiff would hardly have agreed that the defendants could terminate it whenever they wanted to walk off with the confidential information in the plaintiff's database. But the omission of a limitation on the duration of the nondisclosure provision is not fatal to the plaintiff's claim. The customer information in the plaintiff's database *is* a trade secret, defined in the Uniform Trade Secrets Act, in force in Wisconsin, as information that both "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "is the subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat.

§ 134.90(1)(c). Both conditions are satisfied. See *Minuteman, Inc. v. Alexander*, 434 N.W.2d 773, 779-80 (Wis. 1989); *ECT Int'l, Inc. v. Zwerlein*, 597 N.W.2d 479, 484 (Wis. App. 1999). The names in the plaintiff's database are filtered for their suitability to buy insurance, resulting, as the magistrate judge remarked, in "a defined, manageable and economically viable universe of uniquely receptive potential customers."

Besides, the defendants have abandoned the argument, which they made in the district court, that the customer information in the plaintiff's database is not a trade secret. The reason we didn't just note the forfeiture and eschew any discussion of whether the information is a trade secret is that a court is supposed on its own initiative to refuse to enter an injunction that disserves the public interest. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982). An unlimited prohibition against the use of a former principal's customer information that is not a trade secret might be viewed in that light, though the insurance industry is competitive and it is unlikely that barring the defendants from soliciting customers listed in the plaintiff's database will have more than a negligible effect on competition. In any event, the customer information in the database is a trade secret.

So the plaintiff is entitled to an injunction. But there are problems with the wording of the injunction that the district court entered. The first provision we quoted, forbidding the use by the defendants of any information "downloaded" from the plaintiff's database, contains a potential loophole. "Downloading" could be thought to refer only to an electronic operation, such as transferring documents from an electronic database to a computer's hard drive. So defined, it would exclude hand-copying

information from a computer screen. We cannot order the district court to close the loophole, however, as the plaintiff has not filed a cross-appeal, asking that the injunction be modified.

Another problem with the first quoted provision—this one, however, properly raised in this court, by the defendants' appeal—is the inclusion in the prohibition against downloading of "the names contained in Exhibit 34." While most of the names are in the database, some are not, and there isn't any basis for forbidding the defendants to use those names.

The plaintiff itself acknowledges that the second provision we quoted, enjoining the defendants from "servicing" the plaintiff's customers, is overbroad as well as vague (what does "servicing" a customer for insurance mean?). It would forbid the defendants to solicit a person who became a customer of the plaintiff after the defendants were terminated and whom the defendants had solicited without any assist from information in the plaintiff's database, or who was an existing customer of the plaintiff but sought out the defendants rather than being solicited by them. Probably this provision should simply be stricken. But rather than try to work out the details of a proper injunction, we shall remand the case to the district court for the entry of a better-drafted injunction, while affirming so much of that court's decision as determines that the plaintiff is indeed entitled to a preliminary injunction.

AFFIRMED IN PART, VACATED IN PART, AND
REMANDED WITH DIRECTIONS.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*