# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHERYL WIGGINS,                              )
                                             )
    Plaintiff/Counterclaim               )
    Defendant,                           )
                                             )
        v.                   )    C.A. No. N15C-01-186 CLS
                                             )
PHYSIOLOGIC ASSESSMENT                       )
SERVICES, LLC, and                           )
                                             )
    Defendant/Counterclaim               )
    Plaintiff,                           )
                                             )
                                             )
JORDAN KLEAR,                                )
                                             )
    Defendant.                           )

Date Submitted: March 2, 2016
Date Decided: June 3, 2016

On Plaintiff/Counterclaim Defendant Cheryl Wiggins's Motion to Dismiss
Counts II-V of Defendant/Counterclaim Plaintiff's Amended Counterclaims
Pursuant to Superior Court Civil Rule 12(b)(6).
**GRANTED IN PART; DENIED IN PART**.

## ORDER

John G. Harris, Esquire, Berger Harris LLP, Wilmington, Delaware, Attorney for Plaintiff/Counterclaim Defendant.

Lauren E.M. Russell, Esquire, Margaret M. DiBianca, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Attorneys for Defendant/Counterclaim Plaintiff Physiologic Assessment Services, LLC.

**SCOTT, J.**

Plaintiff/Counterclaim Defendant, Cheryl Wiggins ("Wiggins"), has moved to dismiss Counts II-V of Defendant/Counterclaim Plaintiff Physiologic Assessment Services, LLC's ("PAS") amended counterclaims pursuant to Superior Court Civil Rule 12(b)(6). For the following reasons, Wiggins's Partial Motion to Dismiss is **GRANTED, IN PART, AND DENIED, IN PART**.

### Background

This action arises from the termination of Wiggins's employment at PAS in December of 2014. Wiggins filed her initial complaint on January 23, 2015, solely against PAS, asserting claims for breach of contract, promissory estoppel, and violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"). On July 22, 2015, Wiggins filed an amended complaint, adding PAS's CEO, Jordan Klear, as a co-defendant to the action and alleging personal liability against him for the WPCL claims only. On August, 18, 2015, PAS filed its answer, affirmative defenses, and counterclaims to the amended complaint.

PAS is in the business of providing intraoperative neurophysiologic monitoring ("IONM") services to physicians and medical facilities and employed Plaintiff to provide clinical IONM services on its behalf. Wiggins entered into an Employment Agreement with PAS on November 26, 2013, which contains, *inter alia*, the following clauses that are now implicated by PAS's counterclaims: an

2

"Exclusivity of Service" clause (§ 3), a "Non-Competition; Non-Solicitation" clause (§§ 9(c), (e)), and a "Confidentiality" clause (§ 10(c)).

PAS's counterclaims are comprised of the following five counts against Wiggins: (1) breach of contract (Count I); unfair competition (Count II); tortious interference with contractual relationships (Count III); misappropriation of trade secrets (Count IV); and, in the alternative, misappropriation of confidential information (Count V). Wiggins moved to dismiss Counts II-V on September 11, 2015, and PAS replied in opposition on December 4, 2015. Finally, on March 2, 2016, Wiggins filed a reply in support of her motion to dismiss.

## Parties' Contentions

In support of her motion to dismiss, Wiggins argues that Pennsylvania's gist of the action doctrine bars Counts II (unfair competition), III (tortious interference), and, to the extent grounded on the confidentiality clause set forth in the Employment Agreement, IV (misappropriation of trade secrets) of PAS's counterclaims, because they constitute tort claims that are predicated on the same contract-based allegations that ground the breach of contract claim in Count I, and, thus, they should be dismissed with prejudice. In the alternative, Wiggins argues that Count III (tortious interference) fails to state a claim based on PAS's allegation that Wiggins, as an agent-employee, interfered with PAS's contractual relationships with her fellow employees.

3

As to Counts IV and V, Wiggins argues that PAS has failed to state claims for misappropriation of trade secrets and misappropriation of confidential information, because it does not identify the alleged trade secrets or nature of the confidential information that form the basis of the claims or the means by which Wiggins allegedly misappropriated the trade secrets or confidential information.

In response, PAS argues generally that claims for unfair competition are based on non-contractual social duties and, thus, are not barred by the gist of the action doctrine, citing to *Skold v. Galderma Laboratories, L.P.* for support. PAS also argues generally that claims for tortious interference with contractual relationships are unique from claims for breach of contract and, thus, are also not barred by the gist of the action doctrine.

As to its claims for misappropriation of trade secrets and confidential information, PAS argues that its claims should not be dismissed, because it described the trade secrets and confidential information, which it protected, that Wiggins used to create a new, competing company. Specifically, PAS argues that it identified, *inter alia*, its billing methods, customer lists and contact information, and insurance relationships, how it protected the confidentiality of its information, that Wiggins accessed this information both by attending senior management meetings and by using her login credentials, and that she used and continues to use this information to create a new, competing company.

4

## Standard of Review

The test for sufficiency of a complaint challenged by a Rule 12(b)(6) motion to dismiss is whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.[1] In making its determination, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in favor of the non-moving party.[2] The complaint must be without merit as a matter of fact or law to be dismissed.[3] Therefore, if the plaintiff can recover under any conceivable set of circumstances susceptible of proof under the complaint, the motion to dismiss will not be granted.[4]

## Discussion

### I. Pennsylvania's Gist of the Action Doctrine

The Pennsylvania Supreme Court recently reaffirmed that the "touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint" requires a determination of whether the "nature of the duty" upon which the breach of contract claim rests is the same as that which forms the

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (1978); *see Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 2012 WL 172844, at *1 (Del. Jan. 20, 2012) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 537 (Del. 2011)).
[2] *Ramunno v. Cawley*, 705 A.2d 1029, 1034-36 (Del.1998); *Nix v. Sawyer*, 466 A.2d 407, 410 (Del.Super.Ct.1983).
[3] *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52 (Del.1970).
[4] *Ramunno*, 705 A.2d at 1034; *see Cambium*, 2012 WL 172844, at *1 (citing *Cent. Mortg.*, 27 A.3d at 537).

basis of the tort claims. The nature of the duty alleged to have been breached is "established by the underlying averments supporting the claim in a plaintiff's complaint."[5] A claim will be viewed as one for breach of contract if "the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract."[6] A contractual duty, as opposed to a broader social duty, arises in conjunction with "a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract."[7] On the other hand, a claim will be viewed as one in tort if "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract."[8] Therefore, "the mere existence of a contract between two parties does not, *ipso facto,* classify a claim by a contracting party for injury or loss suffered as a result of actions of the other party in performing the contract as one for breach of contract."[9]

The Court's analysis, thus, must begin with the specific allegations that comprise PAS's claims against Wiggins in order to determine whether Counts II (unfair competition), III (tortious interference with contractual relationships, and IV (misappropriation of trade secrets) each state a claim for Wiggins's breach of a

---

[5] *Bruno, et al. v. Erie Ins. Co., et al.,* 106 A.3d 48, 68 (Pa. 2014).
[6] *Id.*
[7] *Id.* at 68-69.
[8] *Id.* at 68.
[9] *Id.* at 69.

contractual obligation created by the Employment Agreement or, rather, for a breach of an independent social duty imposed by the law of torts.

PAS alleges in Count I that Wiggins breached the Employment Agreement in the following ways: (1) by using PAS's time, resources, and confidential information to form a new, competing company, Wiggins breached Section 3; (2) by soliciting, inducing, enticing, or attempting to solicit, induce, entice, hire or employ PAS's current or former employees for her new company, Wiggins breach Section 9(c); (3) by soliciting, or attempting to solicit, PAS's customers to cease doing business with PAS, reduce the amount of business they do with PAS, or otherwise interfere with the business relationship between PAS and its customers, Wiggins breached Section 9(e); and (4) by using PAS's confidential information for her own purposes, and/or for the benefit of her new company, and/or in a manner that had the possibility of injuring or causing loss to PAS, Wiggins breached Section 10(c).[10]

### A. Unfair Competition

In support of its claim for unfair competition in Count II, PAS alleges that it had a reasonable expectation of entering into a valid business relationship with Wiggins by virtue of the Employment Agreement.[11] PAS further alleges that Wiggins interfered with this relationship and defeated PAS's legitimate

---

[10] Def.'s Counterclaims ¶¶ 41-44.
[11] *Id.* at ¶ 47.

expectations by: (1) "using company time, resources, and confidential information to form a new company to compete with PAS;"[12] (2) "soliciting, inducing, enticing, or attempting to solicit, induce, entire [sic], hire or employ [PAS]'s current or former employees for her new company;"[13] (3) "soliciting, or attempting to solicit [PAS]'s customers to cease doing business with [PAS], reduce the amount of business they do with [PAS], or otherwise interfere with the business relationship between [PAS] and its customers;"[14] and (4) "using [PAS]'s confidential information for her own purposes, and/or for the benefit of another company, and/or in a manner that had the possibility of injuring or causing loss, either directly or indirectly, to [PAS]."[15]

Wiggins's assertion that, through these allegations, PAS is merely recasting the breach of contract claim in Count I is supported by the facts. Though PAS did not cite to the specific clauses of the Employment Agreement in this Count, the allegations are verbatim recitations of the contractual clauses referenced in the breach of contract claim.[16] This, combined with the fact that PAS has not alleged that such duties are implied by law regardless of the Employment Agreement,

---

[12] *Id.* at ¶ 48.
[13] *Id.* at ¶ 49.
[14] *Id.* at ¶ 50.
[15] *Id.* at ¶ 51.
[16] *See* Ex. A to Def.'s Counterclaims §§ 3, 9, 10.

compels the Court to find that, under the circumstances, Count II is barred by Pennsylvania's gist of the action doctrine and is, thus, **DISMISSED**.[17]

## B. Tortious Interference with Contractual Relationships

PAS's tortious interference claim refers to both its contractual relationships with two former employees and its customers and alleges that Wiggins collaborated, solicited, induced, attempted to solicit or induce, interfered with, and contributed or caused those employees and customers to breach their respective contractual agreements and/or cease doing business or reduce the amount of business they did with PAS.[18]

Wiggins argues that these allegations merely recast the breach of contract claims and, again, this Court agrees. Notably absent from PAS's allegations are any claims that Wiggins's actions went beyond the Non-Competition; Non-

---

[17] Even if the Court were to interpret PAS's general reference to *Skold v. Galderma Laboratories, LP* as an argument that it is analogous to the case at bar and, thus, provides a basis for this Court not to apply the gist of the action doctrine to bar its unfair competition claim, such an argument fails. *Skold* involved a claim of unfair competition in connection with the breach of a licensing agreement, where the court held that the gist of the action doctrine barred the plaintiff's claim where it was based on actions taken by the defendant founded on breach of the specific executory promises which comprise the contract but not where it was based on actions taken by the defendant after the contract between the parties had already terminated, *i.e.*, "the breach of a broader societal duty not to mislead him which does not relate to any provision of the contract." 99 F.Supp.3d 585, 592, 601-02 (E.D. Pa. Apr. 17, 2015). Here, PAS's counterclaims cannot fairly be read as including any factual allegations regarding Wiggins's actions after she was terminated for allegedly breaching her Employment Agreement, particularly with regard to the use of PAS's confidential information, which would likely be the only viable allegations underlying the unfair competition claim that could survive the gist of the action doctrine under *Skold*. Furthermore, regarding the non-competition/non-solicitation allegations, the restrictive covenant in the Employment Agreement, which is presumed valid as Wiggins's does not appear to have challenged it, had not yet run at the time PAS filed its counterclaims.

[18] Def.'s Counterclaims ¶¶ 53-61.

9

Solicitation restrictive covenant in the Employment Agreement, because the restrictive covenant, by its terms, only restricted Wiggins's interactions with "any physician for whom [she] performed services at any time during the term of [her] employment," "relationship between the Companies and any current or former employee," "any transaction in which any Company was involved or which was pending during the term of [her] employment or at the date on which [her] employment with PAS or any other Company ends," and "any customer or business relation."[19]  Therefore, it does not appear to the Court that PAS's allegations for tortious interference allege the breach of any greater duty than what was agreed to and created by the Employment Agreement.

Furthermore, Wiggins asserts that the facts in *Brown & Brown, Inc. v. Cola* are analogous and compel the Court to dismiss the tortious interference claim under the gist of the action doctrine as the district court did.  In *Brown & Brown*, the plaintiffs alleged that the defendants tortiously interfered with plaintiffs' contractual and business relationships with both its customers and its employees, and the district court found that such conduct fell "squarely within the scope of [the defendants]' respective Employment Agreements," which contained non-solicitation clauses prohibiting the solicitation of employees and existing and

---

[19] Ex. A to Def.'s Counterclaims § 9.

prospective customers.[20] As with PAS's unfair competition claim, absent any allegations that Wiggins's alleged conduct went beyond the restrictive covenant in the Employment Agreement or that her alleged conduct violated a greater societal duty, this Court is compelled to find that, under the circumstances, Count III is also barred by the gist of the action doctrine and is, thus, **DISMISSED**.[21]

### C.    Misappropriation of Trade Secrets

In support of its claim for misappropriation of trade secrets, PAS alleges that Wiggins had access to its confidential, proprietary information, which she misappropriated when she disclosed it to and discussed it with other employees without PAS's consent and used it to form a new company.[22] PAS further alleges that the Employment Agreement expressly prohibits disclosure of confidential information.[23]    Wiggins argues in a footnote that, to the extent PAS's misappropriation of trade secrets claim is grounded on the confidentiality clause or

---

[20] *Brown & Brown, Inc., et al. v. Cola, et al.*, 745 F.Supp.2d 588, 621-22 (E.D. Pa. Oct. 4, 2010).

[21] Again, even if the Court were to interpret PAS's general reference to *Karpf v. Massachusetts Mutual Life Insurance* as an argument that it is analogous to the case at bar and, thus, provides a basis for this Court not to apply the gist of the action doctrine to bar its tortious interference claim, such an argument also fails for the same reasons as the *Skold* argument fails. The district court in *Karpf* found that the gist of the action doctrine did not bar the plaintiff's tortious interference claim, because he alleged that the tortious conduct took place after the termination of his career contract. 2014 WL 1259605, at *5 (E.D. Pa. Mar. 27, 2014). Here, again, PAS's counterclaims cannot fairly be read as including any factual allegations regarding Wiggins's actions after she was terminated for allegedly breaching her Employment Agreement. Thus, PAS's tortious interference claims are not unique under the circumstances.

[22] Def.'s Counterclaims ¶¶ 65-68.

[23] *Id.* at ¶ 21.

other terms set forth in the Employment Agreement, such claim is barred by the gist of the action doctrine, and this Court agrees.[24]

The confidentiality clause in the Employment Agreement not only provides a specific definition of what constitutes "confidential information"—including proprietary information, trade secrets, business or financial information, business development information, customer lists, customer contacts, and any other non-public information generated by PAS—but also expressly prohibits certain actions—including any disclosure, any use that benefits anyone except PAS, and any use or attempted use that has the possibility of injuring or causing loss to PAS—taken with regard to such confidential information taken "during and after the term of [the Employment] Agreement."[25]

PAS's allegations that Wiggins disclosed, discussed and otherwise used its billing methods, customer lists and contact information, and insurance relationships to form a new company, on their face, fall squarely within the scope of the Employment Agreement's confidentiality clause. Therefore, and because PAS failed to address this argument in any way in its Response, this Court is

---

[24] The Court's application here of the gist of the action doctrine assumes that PAS's claim for misappropriation of trade secrets adequately states a claim pursuant to Rule 12(b)(6), which Wiggins argues it does not. Because the Court finds that the gist of the action doctrine bars PAS's claim in any event, its decision need not reach such an analysis.
[25] Ex. A to Def.'s Counterclaims §§ 10(a), (c).

compelled to find that, under the circumstances, Count IV is also barred by the gist of the action doctrine and is, thus, **DISMISSED**.[26]

## II.   Misappropriation of Confidential Information (Count V)

The Court, now having determined that the gist of the action doctrine bars PAS's claims for unfair competition (Count II), tortious interference with contractual relationships (Count III), and misappropriation of trade secrets (Count IV), moves to discuss whether PAS has pled sufficient factual allegations that conceivably state a claim to relief for misappropriation of confidential information (Count V).[27]

Wiggins argues that PAS's claim for misappropriation of confidential information should be dismissed because it does not (1) specify the nature of the information that forms the basis of the claim, (2) generally describe the confidential character of the information at issue, or (3) generally describe the means by which Wiggins allegedly misappropriated that information. PAS argues that it adequately described the confidential information at issue when it devoted an entire section of its counterclaim to do so, that it specifically described the great lengths it went to protect the confidentiality of this information, and that it further

---

[26] *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 106-07 (3rd Cir. Apr. 11, 2001) (finding that the gist of the action doctrine barred claim for misappropriation of trade secrets and confidential information covered by the Know-How Agreement but not the plaintiff's client lists, pricing information, ship-to lists and customer profiles, which constituted confidential information and/or a trade secret not covered by the Know-How Agreement).
[27] *Cambium*, 2012 WL 172844, at *1.

13

pled that Wiggins used (and continues to use) this information to create a new, competing company. Furthermore, PAS cites to *CertainTeed Ceilings Corporation v. Aiken* for support of its argument that misappropriation was adequately pled here. The Court agrees.

First, because PAS's counterclaims include a section titled "Plaintiff's Access to Defendant's Confidential, Proprietary Information" in which it defines its confidential, proprietary information and trade secrets as, *inter alia*, billing methods, processes and practices, customer lists and contact information, services ordered, ordering patterns, insurance company relationships, and other billing and collections information, as well as the names of all of its physician and hospital customers, the contact information of its customers' payers, and billing codes, PAS has, in fact, specified the nature of the information that forms the basis of its claim.[28]

Second, in that same section of its counterclaims, PAS alleges that (1) it "has spent its time, money, and other resources developing its confidential information and has undertaken substantial efforts to protect its confidential, proprietary information from disclosure;"[29] (2) it "restricts access of certain information to limited categories of employees, requires employees to use login credentials to

---

[28] Def.'s Counterclaims ¶¶ 15-17; *see Bohler-Uddeholm*, 247 F.3d at 107 (citing *Robinson Elec. Supervisory Co. v. Johnson*, 154 A.2d 494, 496 (Pa. 1959)) (finding that "information like client lists and profiles, pricing information, and shipping-to information . . . can be a trade secret because such information is highly confidential and constitutes a valuable asset).

[29] Def.'s Counterclaims ¶ 19.

14

access specific types of information, and conducts regular reviews of its systems to verify that information has not been accessed without authorization;"[30] and it "requires high-level employees, including Plaintiff, to execute Employment Agreements that expressly prohibit disclosure of confidential information."[31] Therefore, it appears to the Court that PAS has more than generally described the confidential character of the information at issue.

Finally, regarding the means by which Wiggins allegedly misappropriated such information, PAS, in fact, alleged that Wiggins "used" its confidential information to form a company to compete with PAS,[32] that Wiggins "sent" PAS's confidential information to herself using her personal email address,[33] and, again, that it "requires high-level employees, including Plaintiff, to execute Employment Agreements that expressly prohibit disclosure of confidential information."[34] Furthermore, in *CertainTeed Ceilings Corporation v. Aiken*, the district court found that the plaintiff had adequately alleged misappropriation, where it was alleged that the defendant used the plaintiff's confidential information and trade secrets in the regular performance of his duties and then left his job with the plaintiff to take a job with identical or nearly identical job responsibilities at a

---

[30] *Id.* at ¶ 20.
[31] *Id.* at ¶ 21.
[32] *Id.* at ¶¶ 23, 73
[33] *Id.* at ¶ 31.
[34] *Id.* at ¶ 21.

15

direct competitor in substantially the same sales territory.[35] Therefore, it appears to the Court that PAS's claim for misappropriation of confidential information states a claim that is provable under any reasonably conceivable set of circumstances and, thus, Wiggins's Motion as to Count V is **DENIED**.

### Conclusion

Accordingly, for the foregoing reasons, Plaintiff/Counterclaim Defendant Cheryl Wiggins's Partial Motion to Dismiss is **GRANTED, IN PART, AND DENIED, IN PART.**

**IT IS SO ORDERED.**

The Honorable Calvin L. Scott, Jr.

cc: Prothonotary

---

[35] 2015 WL 410029, at *5.

16