452 A.2d 4

**GORDON WAHLS COMPANY**

**v.**

**Roger W. LINDE, Christopher W. Kellogg, and Graphic Search Associates, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1982.

Filed Oct. 22, 1982.

Edward C. German, Philadelphia, for appellants.

Jerrold Moss, Media, for appellee.

Before SPAETH, WICKERSHAM and CIRILLO, JJ.

SPAETH, Judge:

This is an appeal from an order upholding the validity of a covenant not to compete and granting an injunction. Appellants argue (1) that the covenant is unenforceable because it was not supported by consideration; (2) that appellee, as appellant's employer, has no "protectible" interest that enforcing the covenant would uphold; and (3) that the injunction is overbroad. The first two arguments are without merit, but we believe that the injunction is overbroad and therefore remand for further proceedings.

–1–

Appellee, Gordon Wahls Company, is an employment agency specializing in finding executives for companies in the printing industry. Appellants are former employers of Wahls. Appellant Roger W. Linde went to work for Wahls in May 1970, and appellant Christopher W. Kellogg, in October 1975. In February 1982 they left Wahls and set up a competitive business of their own, appellant Graphic Search Associates.

During his employment with Wahls, Linde signed three employment agreements. The third agreement was signed April 18, 1973, and is the agreement that Wahls seeks to enforce. It contains a covenant that for one year after Linde's employment with Wahls ends, Linde will not compete with Wahls in twenty one specified states and the District of Columbia. The covenants in the two earlier agreements had no express geographical limit. The third agreement also increased Linde's commission, and provided disability benefits. The increase in Linde's commission was announced before the agreement was executed, specifically, on April 2, 1973.

The agreement that Wahls seeks to enforce against Kellogg was signed January 14, 1976. It contains the same convenant as the Linde agreement. It also provided that effective January 2, 1976, Kellogg's compensation was converted from a salary—to a commission—basis, required thirty days' notice of termination, and provided long-term disability benefits.

Appellants' argument that their covenants were not supported by consideration is that the April 2, 1973, announcement of Linde's commission increase, and the January 2, 1976, effective date of Kellogg's going onto commissions, created preexisting obligations. If, appellants reason, Wahls was already obliged to increase their compensation, before the agreements were signed, their promises in those agreements not to compete were not induced by any undertaking that constituted a detriment to Wahls, and, therefore, were not supported by consideration.

This argument is without merit, for two of its predicates are unfulfilled.

First, appellants did not establish that before the agreements were signed, Wahls in fact incurred binding obligations to increase their compensation. The fact that Linde's increased commission was announced before he signed his agreement was not enough to show a binding obligation. Neither was the fact that Kellogg's agreement provided that

the effective date of his increased compensation was a date prior to the date of the agreement itself.

Second, even if appellants had established that Wahls had incurred prior binding obligations to increase their compensation, their reliance on the preexisting duty rule to defeat the enforceability of the restrictive covenants would be misplaced. As the lower court found, each agreement represented "fresh" consideration, apart from the increase in compensation. Linde's prior restrictive covenant was reduced in scope; Kellogg became entitled to thirty days' notice of termination; and both men were provided disability benefits.

–2–

■ Appellant's argument that Wahls has no "protectible" interest that enforcing the covenant would uphold is also without merit. Appellants do not dispute that they were employed by Wahls as "search consultants," and that as such, they dealt directly with Wahls's clients. Persons who deal successfully with their employer's clients may help develop good will, and the employer's interest in preserving that good will is sufficient to justify the enforcement of a covenant not to compete. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977); *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976).

–3–

Appellants argue that the injunction issued by the lower court is overbroad by reason of the underscored language:

ORDERED . . . that Defendants . . . are hereby enjoined from placing, or attempting to place, candidates for employment with any company and from attempting to find employees for any company, (a) if either Defendant Linde or Kellogg received a job order from, or made a referral to, such company while employed by Plaintiff . . . . (Emphasis added.)

This argument is in three parts.

■ First, appellants say that the injunction prohibits them from doing business with a company with which Linde

last had contact twelve years ago. We read the injunction the same way. Linde was employed by Wahls for twelve years, and the injunction prohibits appellants from doing business with a company from which a job order was received "while [either appellant was] employed by" Wahls. Appellants argue that this is too broad a prohibition. We believe that this argument has some force. The purpose of the restrictive covenant that the injunction enforces is to prevent appellants from exploiting the good will they developed as a result of their personal contacts with Wahls's clients. These contacts may no longer have any vitality. For if they were made a good many years ago, as to some of the clients at least, the persons with whom they were made may no longer be working, with the result that appellants may not be known to the clients, and therefore may not be in a position to take advantage of their past contact with the clients.

Appellants next object to the injunction's prohibition that they do business with any company to which either of them "made a referral." Again, we believe that appellants' argument has some force. The injunction does not include a definition of "referral." It might be understood as including an unsolicited mailing to a company. But if there was no response to the mailing, it seems unlikely that appellants could as a result of it have developed any good will. Especially is this so if the mailing was as long as twelve years ago. To prohibit appellants now from doing business with a company that received such a mailing would serve to punish appellants rather than to protect any legitimate interest of Wahls.

If an unsolicited mailing did produce a response, the situation would be different, for then, as a result of subsequent dealings, some good will might have developed, which appellants may fairly be prohibited from exploiting.

Appellant's final argument is that the injunction is overbroad because it prohibits them from doing business with any company for which either of them attempted but

failed to find an executive. This argument has no merit. Good will may be developed from an attempt, even if it proves unsuccessful.

We shall not ourselves try to modify the injunction. In the first place, the parties may themselves be able, in light of this opinion, to agree upon a modification. If that is not possible, the lower court should conduct a further hearing. On the record as it stands, we cannot say how the injunction should be modified, for we do not know how realistic are the dangers, pointed out by appellants, of overbroad prohibition.

The decision of the lower court is affirmed except that the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.