667 A.2d 729

**INSULATION CORPORATION OF AMERICA, Appellee,**

v.

**Gary BROBSTON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1995.

Filed Nov. 3, 1995.

522

Richard J. Orloski, Allentown, for appellant.

Howard S. Stevens, Allentown, for appellee.

Before DEL SOLE, KELLY and BROSKY, JJ.

KELLY, Judge.

In this opinion, we are called on to determine whether the enforcement of a two-year, three hundred mile "non-competi-

tion" covenant contained in a employment contract is reasonable where the former employee was terminated for poor performance and the employer's proprietary business information was already protected under injunctive enforcement of a "non-disclosure" covenant of the same agreement. Under such circumstances, we hold that the modified two-year time restriction imposed upon the former employee is both broader than necessary to protect the employer's business interests and unduly oppressive on the former employee. Accordingly, we affirm in part and reverse in part, dissolving the preliminary injunction enforcing the "non-competition" covenant of the agreement.

This appeal involves a challenge to the trial court's grant of a preliminary injunction in favor of appellee, Insulation Corporation of America ("ICA"), enforcing the terms of "non-disclosure" and "non-competition" restrictive covenants contained in a post-employment agreement between ICA and appellant, Richard Brobston ("Brobston"). The pertinent facts and procedural history of this case are as follows. ICA is a corporation engaged in the manufacture and sale of polystyrene packaging, roofing and insulation products. Brobston was hired by ICA in October, 1982. At the time, Brobston was forty-seven years old, had worked in the insulation industry since 1977, and began his employment without a written contract. His initial position was territory sales manager. In 1986, he was promoted to national account manager. In 1990, he was promoted to general manager.

In July, 1992, ICA decided to expand its product line from commodity or "anyone can do" [1] products into more specialized products through the utilization of a computer-assisted design (CAD) system. Prior to purchasing the CAD system, ICA required that Brobston and certain other employees sign employment contracts which contained restrictive covenants or be terminated. On July 24, 1992, Brobston signed the prof-

1. An "anyone can do" product was described by Brobston as a type of product that is a genuine product, available as a commodity item in lumberyards. (N.T. 12/23/93 at 90).

fered employment contract, which contained the following pertinent terms:

WHEREAS, Employer is considering changing from a commodity (anyone can do) type of product to a more specialized higher margin product that is far less dependent on the changes in construction activity; and

WHEREAS, Employer is about to purchase equipment and computer software to design and cut Employer's products with the assistance of computer assisted design (CAD), and the resulting system requires extensive knowledge and training; and

WHEREAS, Employer finds it necessary and essential to give specialized education and training to certain employees; and

WHEREAS, Employee will be the recipient of information with respect to the operation of the CAD system, including requirements, design, setup, pricing and operation, and, also, the identity of customers of Employer, and Employer's sources of leads for and methods of obtaining new business, and information and training with respect to various techniques, procedures, equipment, designs, drawings, plans, engineering or test data, customer and supplier lists, cost records and other information used or developed by Employer in carrying out Employer's business; and

\*　　\*　　\*　　\*　　\*　　\*

4. The Employee during the term of employment under this Agreement will have access to and become familiar with various trade secrets, consisting of formulas, patterns, devises, secret inventions, processes, sales, earnings, finances and compilations of information, records and specifications and all other concerns of the Employer, which are owned by the Employer and which are regularly used in the operation of the business of the Employer. The Employee shall not disclose any of the aforesaid trade secrets, directly or indirectly, nor use them in any way, either during the term of this Agreement or at any time thereafter, except as

required by the Employer in the course of the Employee's employment for the Employer.

5. On the termination of Employee's employment, for whatever reason whatsoever, the Employee shall not, directly or indirectly, within three hundred (300) miles of Allentown, Pennsylvania, enter into or engage generally in direct competition with the Employer in the business of manufacturing and/or selling expanded polystyrene insulation or packaging either as an individual on Employee's own or as a partner or joint venturer, or as an employee or agent for any person, or as an officer, director, or shareholder or otherwise for a period of three (3) years after the date of termination of Employee's employment hereunder.

(Employment Contract at 1–5).

The purported consideration for Brobston's agreement to be bound was a $2,000.00 increase in his base salary and proprietary information concerning the CAD system, customers and pricing. In October, 1992, Brobston became vice president of special products, which included responsibility for sales of CAD system products and the commodity products.[2] Over the course of the next year, Brobston failed to properly file sales call and expense account reports. Further, Brobston failed to make a satisfactory number of overnight sales calls. Finally, of the fourteen accounts in his territory, only three showed growth; the others showed either flat or decreasing sales. On August 13, 1993, ICA terminated Brobston's employment. On December 8, 1993, Brobston was hired by Foam Plastics of New England, a competitor of ICA, who was aware of the existence of ICA's restrictive covenants. (N.T. 12/23/93 at 80). On December 17, 1993, ICA sought injunctive relief against Brobston, and filed a petition in equity to enforce the employment agreement by enjoining him from disclosing proprietary information about ICA, and by restraining him from competing with ICA. The trial court issued a temporary restraining order on that day, and a preliminary injunction hearing fol-

2. The promotion to vice president of special products was not part of the consideration for Brobston's assent to be bound by the employment agreement.

lowed on December 23, 1993. Brobston was placed on leave without pay by his new employer. (*Id.* at 113–14).

Following the preliminary injunction hearing, the trial court granted ICA's petition for a preliminary injunction and enjoined Brobston from disclosing ICA's trade secrets and from competing with ICA within three hundred miles of Allentown, Pennsylvania for a period of two years from the date of Brobston's termination.[3] (Trial Court Order, 12/30/93 at 3–4). This timely interlocutory appeal followed.[4]

I. WHETHER OR NOT AN EMPLOYER WHO HAS AN ELEVEN YEAR EMPLOYEE SIGN A CONTRACT WITH A RESTRICTIVE COVENANT, AND THEN FAILS TO GIVE THE EMPLOYEE THE BENEFITS OFFERED IN SAID CONTRACT CAN ENFORCE THE CONTRACT AFTER THE EMPLOYER TERMINATES THE EMPLOYEE'S EMPLOYMENT?

II. WHETHER OR NOT AN EMPLOYER WHO RESERVES RIGHT TO CANCEL AN EMPLOYMENT CONTRACT, AND THEN TERMINATES THE RELATIONSHIP CANNOT HAVE THE BENEFIT OF A COVENANT NOT TO COMPETE?

III. WHETHER OR NOT A BELATED RESTRICTIVE COVENANT MUST GIVE EMPLOYEE A "CORRESPONDING BENEFIT"?

IV. WHETHER OR NOT THREE YEARS, 300 MILES IS UNREASONABLE AS A MATTER OF LAW, AFTER EMPLOYMENT TERM OF 10 YEARS WITHOUT SUCH A RESTRICTION?

V. WHETHER OR NOT THE JUDICIAL DETERMINATION THAT THREE YEARS IS UNREASONABLE AS A MATTER OF LAW VOIDS THE RESTRICTIVE COVENANT IN ITS ENTIRETY AND

**3.** The trial court modified the time restriction of the "non-competition" clause from three years to two years.

**4.** The instant appeal is properly before this Court as an interlocutory appeal of right per Pa.R.A.P. 311(a)(4).

THE TRIAL JUDGE IS NOT FREE TO RE–WRITE
THE RESTRICTION FOR TWO YEARS?

Appellant's Brief at 2.

We address appellant's fourth issue first. Appellant contends that the "non-competition" covenant is wholly unenforceable as it bears no reasonable relationship to the protection of ICA. The trial court, on the other hand, concluded that enforcement of the restrictive covenants was necessary to protect ICA's legitimate business interests. Based on the following reasoning, we cannot agree.

 Initially, we note that we are guided by a rather limited standard of review of a trial court's grant of a temporary preliminary injunction,

[w]e will reverse only where we can confidently conclude that the trial court was palpably erroneous, misapplied the law or committed a manifest abuse of discretion. *Schaeffer v. Frey*, 403 Pa.Super. 560, 589 A.2d 752 (1991). If there are any apparently reasonable grounds for the trial court's decision, we must affirm it. *City of Philadelphia v. District Council 33, American Federation of State, County and Municipal Employees*, 525 Pa. 468, 581 A.2d 916, 919 (1990). We also emphasize, as we did in *Schaeffer, supra,* that a preliminary injunction is an extraordinary remedy to be utilized only where the plaintiff has established a clear right to relief. *Schaeffer*, 403 Pa.Super. at 565–566, 589 A.2d at 755.

*Thermo-Guard, Inc. v. Cochran,* 408 Pa.Super. 54, 63–64, 596 A.2d 188, 193 (1991).

 In order for a "non-competition" covenant to be enforceable, it must relate to a contract for employment, be supported by adequate consideration and be reasonably limited in both time and territory. *See Davis & Warde, Inc. v. Tripodi,* 420 Pa.Super. 450, 454, 616 A.2d 1384, 1387 (1992), *appeal denied,* 536 Pa. 624, 637 A.2d 284 (1993); *Bilec v. Auburn & Assoc., Inc. Pension Trust,* 403 Pa.Super. 176, 183, 588 A.2d 538, 542 (1991), *appeal denied,* 528 Pa. 620, 597 A.2d 1150 (1991). More specifically, where a restrictive covenant

has been entered into between an employer and its employee, our courts have permitted the enforcement of post-employment restraints only where they are ancillary to an employment relationship between the parties, the restrictions are reasonably necessary to protect the employer, and the restrictions are reasonably limited in duration and geographic extent. *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 591, 351 A.2d 250, 252 (1976); *Thermo Guard, Inc. v. Cochran, supra* at 64, 596 A.2d at 193; *Bilec v. Auburn & Assoc., Inc. Pension Trust, supra* at 185, 588 A.2d at 541.

In order for a restrictive covenant entered into subsequent to the commencement of the employee's service to be "ancillary," it must be supported by new consideration, which can be in the form of a corresponding benefit or a beneficial change in employment status. *See Davis & Warde, Inc. v. Tripodi, supra* at 456, 616 A.2d at 1387; *Bilec v. Auburn & Assoc., Inc. Pension Trust, supra* at 184, 588 A.2d at 542. Brobston's $2,000.00 annual raise and change of employment status from "at-will" to a written year-to-year term upon signing the agreement was adequate consideration for Brobston's promise not to compete. *See e.g. Modern Laundry and Dry Cleaning Co. v. Farrer,* 370 Pa.Super. 288, 293, 536 A.2d 409, 411 (1988) (change in employment status from provisional to full-time and increased earnings on commission sufficient consideration to bind employee to restrictive covenant).

The salient issue for our determination is whether enforcement of the "non-competition" covenant under these circumstances is reasonable. Post-employment restrictive covenants are subject to a more stringent test of reasonableness than covenants ancillary to the sale of a business. *Thermo-Guard, Inc. v. Cochran, supra* at 64, 596 A.2d at 193. This heightened scrutiny stems from a historical reluctance on the part of our courts to enforce any contracts in restraint of free trade, particularly where they restrain an individual from earning a living at his trade. *See Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 632, 136 A.2d 838, 846 (1957);

Kurt H. Decker, COVENANTS NOT TO COMPETE, Vol. 1, § 2.15 (2nd Ed. rev. 1993). This close scrutiny also stems from our recognition of the inherently unequal bargaining positions of employer and employee when entering into such agreements. *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 491–93, 311 A.2d 628, 630 (1973). The determination of whether a post-employment restrictive covenant is reasonable, and therefore enforceable, is a factual one which requires the court to consider all the facts and circumstances. *Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 452, 235 A.2d 612, 619 (1967); *see* Restatement of Contracts, § 18, Comment a; Corbin *On Contracts,* § 1394. A restrictive covenant found to be reasonable in one case may be unreasonable in others. *Id.*

Generally, our determination of reasonableness of time and territory has involved a weighing of competing interests—that of the employer's need for protection—against the hardship of the restriction to be imposed upon the employee. *Morgan's Home Equipment Corp. v. Martucci, supra* at 631, 136 A.2d at 846; *Thermo–Guard, Inc. v. Cochran, supra* at 64, 596 A.2d at 193. These competing interests were best explained by our Supreme Court as follows:

An employe may receive specialized training and skills, and learn the carefully guarded methods of doing business which are the trade secrets of a particular enterprise. To prevent an employe from utilizing such training and information in competition with his former employer, for the patronage of the public at large, restrictive covenants are entered into. They are enforced by the courts as reasonably necessary for the protection of the employer. *See Arthur Murray Dance Studios, Inc. v. Witter,* 62 Ohio L.Abs. 17, 105 N.E.2d 685, 694–99, 708–711 (1952); 3 Pomeroy, Equity Jurisprudence, § 934c (5th ed. 1941). *A general covenant not to compete, however, imposes a greater hardship upon an employe than upon a seller of a business. An employe is prevented from practicing his trade or skill, or from utilizing his experience in the particular type of work with which he is familiar.* He may encounter difficulty in transferring his

particular experience and training to another line of work, and hence his ability to earn a livelihood is seriously impaired. Further, the employe will usually have few resources in reserve to fall back upon, and he may find it difficult to uproot himself and his family in order to move to a location beyond the area of potential competition with his former employer. Contrarywise, the mobility of capital permits the businessman to utilize his funds in other localities and in other industries.

*Morgan's Home Equipment Corp. v. Martucci, supra* at 631–32, 136 A.2d at 846 (emphasis added). It was the greater hardship imposed upon the employee through the enforcement of such restrictive covenants that prompted our Supreme Court in *Morgan's Home Equipment Corp. v. Martucci, supra* to impose a more stringent test of reasonableness. *Id.* at 632, 139 A.2d at 846. With these precepts in mind, we turn to the facts of this case.

█ Instantly, the record discloses that Brobston, a ten year employee, was privy to certain confidential corporate information such as overhead costs, profit margin, dealer discounts, customer pricing, marketing strategy and customer contract terms. Information of this nature was entitled to be protected by ICA under paragraph four, the "non-disclosure" covenant of the employment contract. *See Morgan's Home Equipment, Corp. v. Martucci, supra* at 623–24, 136 A.2d at 842 (confidential customer data entitled to protection as trade secret under controlling common law) (citing *Macbeth–Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 86 A. 688 (1913)); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Super. 219, 251, 566 A.2d 1214, 1230 (1989) (*en banc*) (inventory data, projections, details, unit costs, product profit margin data are protectible trade secrets). However, the record evidence also reveals that Brobston was terminated because he failed to do his job to increase sales. Brobston was terminated for failing to take overnight sales trips to develop business and for failing to report sales calls and expenses. (N.T. 12/23/93 at 186, 201–

02).[5] Thus, he was fired for failing to promote his employer's interests. It is this factor that was not properly considered by the trial court that merits further scrutiny of the trial court's decision to enforce the "non-competition" covenant.

Because our case law precedent regarding post-employment restrictive covenants requires the facts and circumstances of each case to be evaluated with heightened scrutiny, this mandate compels a more searching inquiry of all the circumstances surrounding enforcement of the covenant to determine its reasonableness. Where an employee is terminated by his employer on the grounds that he has failed to promote the employer's legitimate business interests, it clearly suggests an implicit decision on the part of the employer that its business interests are best promoted without the employee in its service. The employer who fires an employee for failing to perform in a manner that promotes the employer's business interests deems the employee worthless. Once such a determination is made by the employer, the need to protect itself from the former employee is diminished by the fact that the employee's worth to the corporation is presumably insignificant. Under such circumstances, we conclude that it is unreasonable as a matter of law to permit the employer to retain unfettered control over that which it has effectively discarded as worthless to its legitimate business interests.[6]

Moreover, our review of the preamble to the employment contract discloses that ICA's ostensible purpose in requiring Brobston to enter into that agreement was to protect the new

5. There is testimony in the record from ICA's Chief Executive Officer, Mr. Thomas F. Higgins, that he and Mr. William J. Dean, ICA's President, agreed that they would cite "economic reasons" as the basis for Mr. Brobston's firing. (N.T. 12/23/93 at 207). However, as cited above, the record is clear that Brobston was terminated for failing to increase sales in his territory to ICA's satisfaction.

6. This conclusion would remain the same even if it were determined that Brobston was legitimately terminated for economic reasons. The same reasoning applies under that scenario, i.e., where an employer determines that its "bottom-line" is best protected without the employee on the payroll. However, it must be kept in mind that reasonableness is determined on a case-by-case basis. *Jacobson v. International Environment Corp., supra.*

CAD technology it planned to acquire in order to create for itself a niche market and obtain a competitive advantage over other insulation suppliers by producing a "more specialized higher margin product." (See Employment Agreement, supra). The record reveals, however, that Brobston was never given the "extensive knowledge and training" necessary to operate the CAD system. His testimony that he never received the training went unrebutted. (N.T. 12/30/93 at 98). Trial Court Opinion, 8/24/94, at 8 n. 3. Rather, shortly after he signed the contract, Brobston was given a new position in order to cover a sales territory for a retiring sales representative.

■ Thus, Brobston was left with a $2,000.00 annual increase, but no working knowledge of the CAD system and its processes. Brobston admittedly possessed confidential customer sales and profit margin information that related to the system. A close reading of the contract reveals that information of this nature was adequately addressed by the "non-disclosure" covenant of paragraph five. ICA sought and received injunctive enforcement of both that covenant and the "non-competition" covenant of paragraph five. Because we are of the opinion that ICA properly sought and was granted equitable relief vis-a-vis the confidential information, the trial court's enforcement of the non-competition covenant would be unnecessary to protect its interests and be unfairly oppressive to Brobston's ability to earn a living.[7]

■ It bears noting that there is a significant factual distinction between the hardship imposed by the enforcement of a restrictive covenant on an employee who voluntarily leaves his employer and that imposed upon an employee who is terminated for failing to do his job.[8] The salesman dis-

7. We note that the "non-disclosure" covenant is not limited by the reasonableness criteria applicable to "non-competition" covenants. See Bell Fuel Corp. v. Cattolico, 375 Pa.Super. 238, 254, 544 A.2d 450, 458 (1988), appeal denied, 520 Pa. 612, 554 A.2d 505 (1989).

8. Significantly, none of the published decisions of this Court or our Supreme Court have addressed such a situation as is presented here. Rather, the balance of the published decisions in the Commonwealth

under the standard set forth in *Morgan's Home Equipment Corp. v. Martucci, supra,* involved circumstances where the employee voluntarily terminated the employment relationship. *Bryant v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); *Boldt Machinery and Tools v. Wallace,* 469 Pa. 504, 366 A.2d 902 (1976) *(per curiam); Sidco v. Aaron, supra; Girard Investment Co. v. Bello,* 456 Pa. 220, 318 A.2d 718 (1974); *Trilog Associates, Inc. v. Famularo,* 455 Pa. 243, 314 A.2d 287 (1974); *Bettinger v. Carl Berke & Associates,* 455 Pa. 100, 314 A.2d 296 (1974); *Reading Aviation Service, Inc. v. Bertolet, supra; Jacobson and Co. v. International Environment Corp., supra; Capital Bakers v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967); *Beneficial Finance Co. of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966); *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 207 A.2d 768 (1965); *Barb–Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965); *Spring Steels Inc. v. Molloy,* 400 Pa. 354, 162 A.2d 370 (1960); *Pa. Funds Corp. v. Vogel,* 399 Pa. 1, 159 A.2d 472 (1960); *Robinson Electronic Supervisory Co. Inc. v. Johnson,* 397 Pa. 268, 154 A.2d 494 (1959); *Morgan's Home Equipment v. Martucci, supra; Davis & Warde v. Tripodi, supra; Ruffing v. 84 Lumber Inc.,* 410 Pa.Super. 459, 600 A.2d 545 (1991), *appeal denied,* 530 Pa. 666, 610 A.2d 46 (1992); *Bilec v. Auburn & Assoc. Inc. Pension Trust, supra; Harsco Corp. v. Klein,* 395 Pa.Super. 212, 576 A.2d 1118 (1990); *Boyce v. Smith–Edwards–Dunlap Co.,* 398 Pa.Super. 345, 580 A.2d 1382 (1990), *appeal denied,* 527 Pa. 639, 593 A.2d 413 (1991); *Rollins Protective Services Inc. v. Shaffer,* 383 Pa.Super. 598, 557 A.2d 413 (1989); *Bell Fuel Corp. v. Cattolico, supra; Modern Laundry and Dry Cleaning Co. v. Farrer, supra; Quaker City Engine Rebuilders, Inc. v. Toscano,* 369 Pa.Super. 573, 535 A.2d 1083 (1987); *Blair Design and Construction Co. Inc. v. Kalimon,* 366 Pa.Super. 194, 530 A.2d 1357 (1987); *Martin Industrial Supply Corp. v. Riffert,* 366 Pa.Super. 89, 530 A.2d 906 (1987); *Records Center, Inc. v. Comprehensive Management Inc.,* 363 Pa.Super. 79, 525 A.2d 433 (1987); *Wainwright's Travel Service Inc. v. Schmolk,* 347 Pa.Super. 199, 500 A.2d 476 (1985); *Robert Clifton Associates, Inc. v. O'Connor,* 338 Pa.Super. 246, 487 A.2d 947 (1985); *Gordon Wahls Co. v. Linde,* 306 Pa.Super. 64, 452 A.2d 4 (1982); *Peripheral Dynamics, Inc. v. Holdsworth,* 254 Pa.Super. 310, 385 A.2d 1354 (1978) *(per curiam).*

Following an exhaustive search of our case law, we discovered only a few cases that are even remotely similar to the circumstances presented here. For example, in *Kistler v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975), the employee was discharged by his employer and raised the grounds of wrongful discharge to test the reasonableness of the restrictive covenant. However, the court invalidated the restrictive covenant for failure of adequate consideration. Further, the basis for the termination was not discussed. In *Maintenance Specialties, Inc. v. Gottus,* 455 Pa. 327, 314 A.2d 279 (1974), the employee was not terminated, but the employer filed a complaint alleging breach of the restrictive covenant. In *Trilog Associates, Inc. v. Famularo, supra,* one employee was terminated while two others voluntarily quit. The reason for the one employee's termination was not discussed. On appeal, the restrictive covenants were held void due to unlimited time and territory restraints. In *Hayes v. Altman,* 424 Pa. 23, 225 A.2d 670 (1967), the employee was

charged for poor sales performance cannot reasonably be perceived to pose the same competitive threat to his employer's business interests as the salesman whose performance is not questioned, but who voluntarily resigns to join another business in direct competition with the employer. Such circumstances are analogous to that of the novice referenced by our Supreme Court in *Jacobson v. International Environment Corp., supra* at 450, 235 A.2d at 618, where, quoting the chancellor in equity, the court stated " '[o]nly when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of a restrictive covenant'... It is true that a restrictive covenant in the novice's contract might well be held to be unreasonable as applied to the novice who remained a novice." *Id.* We are of the opinion that the failed salesman in this case is in no better position to injure ICA if "unleashed competitively" than the aforementioned novice. The record amply demonstrates that he has not acquired any special expertise in CAD system-produced insulation products, nor has he demonstrated to his employer that his sales skills are a competitive force warranting protection through a "non-competition" covenant. These circumstances reflect economic reality, and the law should properly be influenced by it. *Jacobson v. International Environment Corp., supra* at 450, 235 A.2d at 618. Accordingly, because the circumstances under which the employment relationship is terminated are an important factor to consider in assessing both the employer's

---

terminated for failing to sign the restrictive covenant. However, there was no dispute as to his work having been completely satisfactory.

To the extent that previous published decisions do not refer to the reason for the termination of the employment relationship, we now hold that this is a factor that must be considered in order to determine whether enforcement is *truly* reasonable. For example, the corporate officers of ICA admitted that they sought to conceal their reasons for terminating Mr. Brobston. Even if, in their minds, it would help him seek employment, it reinforces the point that honesty must be the best policy. As our Supreme Court, in a similar case stated: " 'We are approaching nearer and nearer to the conclusion [in restraint of trade cases], although we have not yet reached it, 'that common honesty is the true public policy.' " *Plunkett Chemical Co. v. Reeve*, 373 Pa. 513, 517, 95 A.2d 925, 927 (1953) (quoting *Monongahela River Consolidated Coal and Coke Co. v. Jutte*, 210 Pa. 288, 302, 59 A. 1088, 1093 (1904)).

protective interests and the employee's ability to earn a living, *i.e.* the reasonableness of enforcing the restrictive covenant, Brobston's firing should have been included in the trial court's determination of reasonableness.

In an Ohio case cited by our Supreme Court in *Morgan's Home Equipment, Corp. v. Martucci, supra* at 631, 136 A.2d at 846, the court in *Arthur Murray Dance Studios, Inc. v. Witter,* 105 N.E.2d 685 (1952), reviewed the factors that have been considered by courts when determining the harshness and oppression of enforcement of post-employment restrictive covenants as follows:

Matters considered

"In treating undue harshness and oppression, the courts ... focus a great deal of attention on such inquiries as: What is the situation of employee and his family? What is employee's capacity? Is employee handicapped or disabled in any way? What effect will the restraint have on employee's life? Will it deprive him of opportunity of supporting himself and his family in reasonable comfort? Will it force him to give up the work for which he is best trained or be expatriated? What are business conditions? Is there prevailing unemployment? Was the employment terminable at employer's will? Did employee work for employer a very brief time? What were the circumstances of termination of the employment? Did the termination constitute a breach of contract by employer? If not a breach, was it unreasonable? What is the character and extent of consideration to employee?"

*Arthur Murray Dance Studios, Inc. v. Witter, supra* at 700. Although not controlling authority, we mention this inquiry as illustrative of the level of scrutiny to which these covenants must be subjected, particularly under the circumstances as presented here. It is not enough merely to ask the ultimate question of whether the covenant will be oppressive. By its very nature, the test calls for a searching inquiry of all the circumstances surrounding the employment relationship *and* its termination. On this record, the trial court failed to

include such an inquiry in its determination of the reasonableness of the "non-competition" covenant.

We are cognizant of the trial court's equitable power to modify unreasonable terms of restrictive covenants, which was done by the trial court here. *See Morgan's Home Equipment Corp. v. Martucci, supra* at 632–33, 136 A.2d at 848 (where covenant imposes restrictions broader than necessary to protect employer, court of equity may grant enforcement limited to those portions of restrictions reasonably necessary to protect employer); *Bell Fuel Corp. v. Cattolico, supra* at 257 n. 6, 544 A.2d at 459 n. 6. However, it is our determination that the trial court failed to properly consider the circumstances surrounding Brobston's termination, a factor which affects both the legitimacy of the employer's interests and the degree of hardship imposed upon the departing employee.

Further, we are of the opinion that injunctive enforcement of the "non-disclosure" clause provides the relief necessary to protect ICA's *legitimate* business interests.[9] In *Morgan's Home Equipment Corp. v. Martucci, supra* at 632, 136 A.2d at 846–47, our Supreme Court concluded that although former employees had obtained confidential information, the employer was adequately protected by a decree enjoining disclosure of the information, thereby preventing the former employees from benefitting from their customer contacts and knowledge. In light of those facts, the court found that the "non-competition" covenants were not reasonably necessary for the employer's protection and constituted an undue hardship upon the former employees. *Id.* Similarly, here, to impose an additional burden on Mr. Brobston under these circumstances would tip the balance of reasonableness away from the protec-

**9.** The trial court enjoined and restrained Brobston from disclosing either directly or indirectly, ICA's trade secrets consisting of formulae, patterns, devices, secret inventions, processes, sales, earnings, finances, compilation of information, records and specifications owned or used by ICA or acquired by Brobston during the tenure of his employment there. This injunction applies regardless of Brobston's future employment, whether it be with a competitor of ICA, or outside the insulation industry entirely. Whether or not Brobston has violated or will violate the trial court's injunction is not presently before this court, and is a matter left for another day.

tion of ICA's legitimate business interests and into the realm of undue oppression upon his ability to earn a living. Therefore, under these circumstances, we hold that the trial court's enforcement of the instant "non-competition" covenant constitutes palpable error. *Thermo–Guard, Inc. v. Cochran, supra.*

Accordingly, we affirm the trial court's grant of a preliminary injunction as to the "non-disclosure" clause of the employment agreement and reverse the trial court's injunctive enforcement of the "non-competitive" clause. The injunction restraining and enjoining Brobston from competing with ICA for radius of three hundred miles and for two years is hereby dissolved.

Order affirmed in part, reversed in part. Jurisdiction relinquished.[10]

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

The majority reaches the conclusion that the employment agreement is not enforceable because Appellant was terminated and, therefore, his value to Appellee was worthless. Accordingly, the majority holds that an employer needs no protection against a worthless employee. However, that is not the proper focus. It is the discharged employee's knowledge of the business which is being restricted.

As the majority points out, Appellant, while he may not have been able to actually operate the CAD system, "admittedly possessed confidential customer sales and profit margin information that related to the system". Possessing that kind of knowledge can certainly create an unfair advantage in the marketplace.

Appellant worked for Appellee for ten years and during the greater part of his career, Appellant was a successful salesperson and ultimately achieved the position of Vice President of special products. Even though Appellant clearly had a signifi-

10. In light of our disposition of the instant appeal on appellant's fourth issue, we need not address the remaining issues raised on appeal.

cant amount of experience with Appellee's products and pricing, the majority writes:

"[o]nce such a determination [to terminate an employee] is made by the employer, the need to protect itself from the former employee is diminished by the fact that the employee's worth to the corporation is presumably insignificant. It bears noting that there is a significant factual distinction between the hardship imposed by the enforcement of a restrictive covenant on an employee who voluntarily leaves his employer and that imposed upon an employee who is terminated for failing to do his job. The salesman discharged for poor sales performance cannot reasonably be perceived to pose the same competitive threat to his employer's business interests as the salesman whose performance is not questioned, but who voluntarily resigns to join another business in direct competition with the employer."

This line of reasoning does not take into account the fact that an employee necessarily acquires a certain amount of knowledge about an employer's business over a period of time. Furthermore, the majority's statement that "the record amply demonstrates that he has not acquired any special expertise in CAD system-produced insulation products, nor has he demonstrated to his employer that his sales skills are a competitive force warranting protection through a "non-competition covenant" is erroneous. It is overreaching to state that because Appellee terminated Appellant based upon poor performance, Appellee did not need any protection. Appellant's poor performance was of a recent nature and it is nonsensical to conclude that Appellee could assume that based upon his recent performance, Appellant would be equally unproductive elsewhere. This conclusion ignores the many factors that can play a role in an employee's productivity.

Furthermore, In Footnote # 8 the majority seeks to interject into the employer-employee restrictive covenant law of this Commonwealth something that is not now nor ever has been a criteria for enforcement of a restrictive covenant—namely the reason for the termination of an employee.

The majority suggests that where an employee has been terminated by the employer, under no circumstances can an employer seek to enforce a post-employment restrictive covenant. With that rationale in mind, what is to prevent a salesperson, who has secretly been recruited by a competitor, from purposely trying to be terminated rather than resigning and then working for the competitor free of the constraints of the restrictive covenant.

In reaching its conclusion that the restrictive covenant presented in the instant case is not reasonable and, therefore, unenforceable, the majority relies heavily on the principle that "[p]ost-employment restrictive covenants are subject to a more stringent test of reasonableness than covenants ancillary to the sale of a business". I am cognizant of the fact that this heightened scrutiny is the result of the fact that a covenant not to compete may place undue hardship upon an individual who would have to make significant changes in his life in order to avoid violating the covenant. However, while courts have been traditionally reluctant to enforce these covenants, the fact remains that they must be decided on a case by case basis and a balancing test must be employed.

The test to be applied in determining whether a post-employment restrictive covenant is enforceable is well-settled. The trial court looks to the adequacy of the consideration, the necessity to protect the employer's interest and the reasonableness of the time and scope of the restriction. In the instant case, Appellant was adequately compensated for entering into the agreement, the need to protect Appellee's interests was clearly illustrated and the time and scope of the covenant was made reasonable by the trial court.

If there is no risk of harm to the employer, the trial court can refuse to enter an injunction. The issue before us is whether the record supports the trial court's conclusion and I find that it does.

Accordingly, I would affirm the trial court's Order.