## Joyner Sports Medicine Institute Inc. v. Stejbach

C.P. of Dauphin County, no. 5627 Equity.

*Ronald M. Katzman* and *Steven E. Grubb,* for plaintiff.

*James J. West,* for defendant.

KLEINFELTER, *J.,* November 30, 1999—This matter is before the court on a motion for preliminary in-

junction filed by Joyner Sports Medicine Institute Inc. on August 11, 1999. The defendants, David Stejbach and Karen Buzzard, are former employees of Joyner. Beginning May 15, 1996, Stejbach was employed as a physical therapist and site administrator at Joyner's East Stroudsburg facility. Buzzard was hired on September 4, 1997, as an occupational therapist at the same location.

Following a hearing on August 23, 1999, this court entered an order which preliminarily enjoined Stejbach and Buzzard "from violating the provisions of their employment contracts by accepting any employment with Pocono Orthopedic Consultants," a competing organization located directly across the street from Joyner's office in East Stroudsburg. The court also ordered a hearing on a permanent injunction which was scheduled and heard on September 8, 1999.[1]

There is little dispute regarding the underlying facts. As a condition of employment with Joyner, both Stejbach and Buzzard entered into an employment contract which contained the following provision:

"(11) *Noncompetition prohibition:* For the duration of employee's employment, and for a period of two years following the termination of employee's employment, employee shall not, directly or indirectly, as an employee, agent, independent contractor, consultant, owner, stockholder, partner, officer, director or otherwise, enter into or in any manner take part in any business or perform any services in direct competition with the business of

---

1. Both Stejbach and Buzzard appeared in defense of the motion on August 23, 1999; however, Buzzard did not appear in person or by counsel for the September 8, 1999 proceeding.

the employer, within a 10 mile radius of the assigned center." Employment agreement: Joyner/Stejbach, p. 4.

Buzzard's agreement differs from Stejbach's in only the duration provision which, in her case, is for a period of one year.

By all accounts, the employment relationship went smoothly until on or about March 6-9, 1998, when all of Joyner's employees were suddenly advised that the firm of Nova Care Inc. had acquired 100 percent of the stock of Joyner.[2] Although the Joyner name continued to be presented to the public, it was immediately clear to the employees of Joyner that they had a new employer. Within weeks of the acquisition, all employees were summoned to conferences at various locations where a Nova Care employee explained a new benefits package. Each employee was required to sign an acknowledgement that they had attended the meeting and that they had received a copy of the "Nova Care (Outpatient Division) Employee Handbook."

Both Stejbach and Buzzard testified that the new benefits package represented a substantial loss over their arrangement with Joyner. The changes affected vacation time, a 401K retirement plan and educational benefits. Of greatest significance to Stejbach was Nova Care's advisory that he would no longer receive merit-based salary increases (as he had under Joyner); and, moreover, that his present salary was "capped."

As further evidence of a change of employers, paychecks were now issued by Nova Care Employee Services Inc., another wholly owned subsidiary of Nova Care Inc. Wages paid after the acquisition were reflected on a

---

2. Actually, the acquisition of Joyner's stock was by Nova Care Occupational Rehabilitation East Inc., which is a wholly owned subsidiary of Nova Care Inc.

W-2 form issued by Nova Care Employee Services Inc. (as "employer"), while those paid prior to the acquisition were separated on a W-2 showing Joyner as "employer."

Apparently dissatisfied with his new employment status, Stejbach tendered his resignation on July 10, 1999. He advised his regional director of operations that he would be joining Pocono Orthopedics, a group of physicians in East Stroudsburg who planned to open a physical therapy component to their practice. Stejbach's last day of work at Joyner-Nova Care was August 10, 1999. Buzzard gave Nova Care a one-month notice at about the same time and indicated that she, too, would be going to work for Pocono Orthopedics.

We begin our legal discussion by noting that none of the defendants contest the underlying validity of their employment agreement or the reasonableness of its terms. The agreements are supported by adequate consideration and, given the nature of the employer's business, were reasonably necessary for their protection. See *Sidco Paper Company v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976). For a restrictive covenant to be enforceable, it must be "reasonable in time, reasonable in geographic extent, and reasonably necessary to protect the employer without imposing an undue hardship on the employee." *Peripheral Dynamics Inc. v. Holdsworth,* 254 Pa. Super. 310, 316, 385 A.2d 1354, 1359 (1978). The spatial (10 miles) and temporal (one year—Buzzard; two years—Stejbach) limitations would appear to be reasonably necessary in this case. Accordingly, we are satisfied that, given no change in employment relationship, Joyner would be clearly within their rights to enforce the restrictive covenants in these employment contracts.

We are faced, however, with the issue of the effect of the purchase of Joyner by Nova Care Inc. in March of 1998. Joyner argues that the outcome of this case hinges upon the difference between a stock acquisition and an asset purchase agreement. Joyner argues that, after the purchase of its stock by Nova Care, Joyner remained a viable corporate entity, only with different shareholders. As such, Joyner contends that there was no need to transfer individual assets, rights, or liabilities as there would have been in an acquisition through the purchase of assets.

"Thus, the parties need not prepare the deeds, bills of sale, and other instruments under which assets are assigned and liabilities assumed in the asset transaction. The only transfers involved are exchanges by the selling shareholders of their shares for the stock or other consideration given by the acquiring corporation." Corporate Acquisitions and Mergers, Section 5A.04(2)(a) (Matthew Bender & Co. Inc., 1998).

In accordance with the foregoing, Joyner argues that all employee contracts were acquired by Nova Care and that no assignment was necessary. Drawing an analogy to a unionized work force, Joyner argues that buyers in a stock transfer or sale are normally bound by the sellers' contract with the union, while buyers in an asset purchase are not, citing Walters, Katherine E., *Other Labor and Employment Issues in Buying and Selling a Business,* 116 (Christopher M. Chicconi et al., Eds. Pennsylvania Bar Institute 1997).

Stejbach and Buzzard argue, on the other hand, that their situation is controlled by *All-Pak Inc. v. Johnston,* 694 A.2d 347 (Pa. Super. 1997). In *All-Pak,* the employee, Johnston, entered into an employment contract with All-Pak Inc. at the time he began his employment. The con-

tract contained a restrictive covenant not to compete post-employment. Thereafter, All-Pak Inc. entered into an "asset sale agreement" with an investment group, Total-Pak Inc. Total-Pak purchased all of the assets of All-Pak Inc., and changed its name to All-Pak Inc. Johnston continued his employment with the new All-Pak Inc., until his employment was terminated. Thereafter, he became employed by a competitor of All-Pak Inc. The new All-Pak Inc. filed suit seeking equitable and legal relief.

The Superior Court framed the issue: "[W]hether an employment contract that includes a restrictive covenant can be assigned from one employer to another without obtaining the consent of the employee." *All-Pak Inc.*, 694 A.2d at 350. After reviewing the general principles governing the enforceability of restrictive covenants in employment contracts, the court observed that "no Pennsylvania appellate court has ruled whether a restrictive covenant in an employment contract can be assigned by the employer." *Id.* at 351. (footnote omitted) Judge Schiller went on to state:

"Strong policy considerations underlie the conclusion that restrictive covenants are not assignable. Given that restrictive covenants have been held to impose a restraint on an employee's right to earn a livelihood, they should be construed narrowly; and, absent an explicit assignability provision, courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause within the terms of the employment contract. Similarly, a successor employer is free to negotiate new employment contracts with the employees, as the record reveals new All-Pak did with several employees, or secure the employee's consent to

have the prior employment contract remain in effect." *Id.* at 351. (footnotes omitted)

In *All-Pak,* as in the case before us, the employment contract contained no assignment clause and neither the new or former employer attempted to obtain one. Thus, there was no express or implied consent to the assignment. *Green's Dairy Inc. v. Chilcoat,* 89 D.&C. 351 (York 1954); cf. *Jack Tratenberg Inc. v. Komoroff,* 87 D.&C. 1 (Phila. 1951).

*All-Pak* next considered how those factors attending an employee's termination might affect the enforceability of a restrictive covenant; *e.g.* did the employee quit voluntarily, was he discharged for poor performance, or was he fired without cause. *Insulation Corp. of America v. Brobston,* 446 Pa. Super. 520, 667 A.2d 729 (1995).

We believe that *All-Pak* is controlling in the case at bar. True, as Joyner strenuously argues, *All-Pak* involved an asset purchase agreement as opposed to a stock purchase. However, we view this as a distinction without a difference. The point of focus should not be on the relationship between the old employer and the new employer, but rather as between the employee and the new employer. The strong policy considerations referred to in *All-Pak* recognize that the employment relationship is a personal matter between an employee and the company who hired him and for whom he chose to work. Unless an employee explicitly agreed to an assignability provision, an employer may not treat him as some chattel to be conveyed, like a filing cabinet, to a successor firm. In the case at bar, the employment contract drafted by Joyner is devoid of any assignability provision.

We are also compelled to note that in *All-Pak* the plaintiff was the successor firm, *i.e.,* the "new" All-Pak Inc., which sought to enforce the restrictive covenant. In the

case at bar, it is Joyner that seeks to enforce the covenant, not its successor, Nova Care. Thus, the assignability of the contract is technically[3] not at issue here. It is Joyner, the original employer, that has brought this action.

It necessarily follows that we must then ask, what is the present employer-employee relationship between Joyner and Stejbach/Buzzard? Upon our review of the evidence, we are satisfied that any employment relationship between these parties was effectively terminated on or about March 9, 1998, the date of the acquisition. While Joyner may continue to exist as a corporation, it is only a shell. The change in paychecks and W-2s are clear evidence that Joyner is no longer the employer of Stejbach/Buzzard. Moreover, Nova Care unilaterally altered the compensation package for these employees.[4]

We conclude as a matter of law that, as of the acquisition date, Stejbach and Buzzard were no longer employees of Joyner and that they were effectively terminated. Although terminated from Joyner, and although the contract was not assigned to Nova Care, Stejbach and Buzzard were still obligated to Joyner under the non-competition prohibition of their contracts. Under the contract terms, this provision survives the termination of employment for any reason. That is to say, this clause's viability is not dependent on whether the employee was terminated with or without cause or left voluntarily. Thus,

---

3. We say "technically," with the full realization that it is in fact Nova Care that seeks to enforce the contract through its wholly owned subsidiary Joyner.

4. Joyner argues that the employment contracts allow the employer to change the benefits from time to time "at employer's discretion." This argument overlooks the fact that the benefits were changed by Nova Care and not Joyner.

in the case of Stejbach, the noncompete clause is effective for two years, *i.e.,* from March 9, 1998, to March 9, 2000. As for Buzzard, who had only a one-year limitation, the restriction was operative only from March 9, 1998, to March 9, 1999. As of this date, then, Buzzard is no longer bound by the noncompetition prohibition.

What remains as to Stejbach is an application of the review required by *Insulation Corp. of America v. Brobston, supra.* In that case, our Superior Court determined that, regardless of the reasonableness of the time and space restrictions, where an employer fires an employee for failing to perform, "it is unreasonable as a matter of law to permit the employer to retain unfettered control over that which it has effectively discarded as worthless to its legitimate business interests." *Insulation Corp. of America,* 446 Pa. Super. at 532, 667 A.2d at 735. (footnote omitted)

In our case, although the termination was accomplished unilaterally by the Joyner-Nova Care acquisition, Stejbach was given continued employment. Stejbach continued in that new employment until tendering his resignation on July 10, 1999. As to Stejbach, we find his noncompetition prohibition to be in effect, from March 9, 1998 through March 9, 2000, and enforceable.

Accordingly we enter the following:

## DECREE NISI

And now, November 30, 1999, the preliminary injunction entered by this court on August 23, 1999, as to Karen Buzzard is dissolved. As to David Stejbach, the injunction is made permanent through March 9, 2000.