**John Savoy & Son, Inc. v. Seyler**

*J. David Smith*, for plaintiff.
*Ryan M. Tira*, for defendant.

ANDERSON, *J.*, May 12, 2014—

## OPINION AND ORDER

Before the court is plaintiff's petition for preliminary injunction, filed contemporaneously with their complaint in law and equity on May 6, 2014. A hearing on the petition was held May 12, 2014. The parties requested an opportunity to file briefs following the hearing; such were filed May 19, 2014.

Defendant was previously employed by plaintiff (hereinafter "Savoy") from June 4, 2012, through March 6, 2014, as a sales manager. Savoy is in the business of manufacturing, selling and distributing furniture for the university/college residence hall and military housing markets. In March 2013, Savoy became aware that defendant had used a company credit card for his own personal use and, as a result of discussions between the parties, Savoy allowed defendant to continue his employment there in exchange for several considerations from defendant, including signing an agreement (dated April 5, 2013) which contained a covenant not to compete. In March 2014, defendant was terminated for refusing to submit to a drug test, which refusal was contrary to his agreement (in the April 5, 2013, agreement) to do so. In

early April 2014, Savoy learned that defendant had taken a sales position with Blue Furniture Solutions, which Savoy alleges is in direct competition with Savoy, in violation of the covenant not to compete. The instant petition seeks a preliminary injunction enforcing the covenant and preventing defendant from competing with Savoy or disclosing any confidential or proprietary information or trade secrets of Savoy.

The covenant at issue provides that "during the time that employee is employed by Savoy and for a period of two (2) years after employee cease to be employed by Savoy, whether by resignation by employee, wrongful discharge, or otherwise, employee shall not, directly or indirectly, either as an individual or on his own account, or as a partner or joint venture, or as an employee, agent, or salesperson for any person or business entity, or as an officer, director, or stockholder of a corporation, or otherwise, enter into or engage in any activity or business in competition with Savoy relating to the manufacturing, distribution, or sale of furniture for the university or college residence hall or military housing markets anywhere within the United States and world-wide as it relates to U.S. military bases." Defendant also agreed to "not contact any person, firm, or other entity currently or formerly engaged in any business with Savoy," "not to disclose any trade secrets, confidential information, intellectual property, customer lists, or other like information concerning Savoy," and not to "render to others services which are the same or similar to the services rendered by employee to customers of Savoy." As noted above, Savoy now contends that defendant's employment with Blue Furniture Solutions is in violation of the covenant not to compete inasmuch as Blue Furniture Solutions is a direct competitor of Savoy

and defendant is performing the same function for Blue as it performed for Savoy. Defendant argues in response that the covenant is unenforceable due to duress,[1] defendant having been terminated by Savoy, and the covenant being overly broad.

With respect to the issue of duress, defendant argues he was not given the opportunity to consult with counsel and, moreover, the threat of prosecution if he did not sign it constituted duress, rendering the agreement voidable. Defendant points to the following language of the agreement: "[w]hereas, Savoy is willing to consider the continued employment of employee and a deferral of prosecution of any charges arising out of the misuse of the credit card, but subject only to employee's full, timely, and comprehensive compliance with the terms set forth in this agreement and with whatever other employment obligations might arise for the employee in the ordinary course of Savoy's business." The court agrees that an agreement not to prosecute a criminal proceeding is "emphatically illegal," Corbin on Contracts, Volume 7, Section 28.4, and the threat of criminal prosecution constitutes duress which renders a contract voidable. *Germantown Manufacturing Company v. Rawlinson*, 491 A.2d 138 (Pa. Super. 1985). A transaction that is voidable for duress may be enforceable nevertheless, however, if it is ratified. Corbin on Contracts, Volume 7, Section 28.8. "Ratification results if a party who executed a contract under duress accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable

---

1. Although in the introductory portion of his brief defendant also mentions lack of consideration, he does not follow-up on that issue in the discussion portion. In any event, the court would find sufficient consideration in Savoy's willingness to continue defendant's employment in spite of his having stolen from them.

length of time after the party has the opportunity to annul or avoid the contract." *National Auto Brokers Corporation v. Aleeda Development Corporation*, 364 A.2d 470, 476 (Pa. Super. 1976). In the instant case, the court finds that defendant ratified the contract by accepting its benefits (continued employment and the $1000 payment) and remaining silent about the issue for a year. The agreement is thus not unenforceable on this basis.

Defendant also argues the covenant is unenforceable because he was terminated, and points to Savoy's president's testimony that he was considered a "liability" to the company. While enforcement of restrictive covenants is generally disfavored against employees who are fired, on the theory that the employer views such employees as worthless, *Insulation Corporation of America v. Brobston*, 667 A.2d 729 (Pa. Super. 1995), enforcement is to be determined on a case by case basis and the mere termination of an employee does not bar the employer's right to injunctive relief. *All-Pak, Inc. v. Johnston*, 694 A.2d 347 (Pa. Super. 1997). In the instant case, defendant was terminated not because Savoy considered him worthless as a salesman, but because he was engaging in activity which violated company policies. In such instance, the employer's right to injunctive relief survives. *Id.*

Finally, defendant contends the covenant is overly broad and not reasonably related to Savoy's legitimate business interests. The court does not agree. Testimony established that Savoy does business in all fifty of the United States, and with respect to the military, world-wide. Although Savoy's products are more expensive than Blue's products, during defendant's tenure with Savoy, Savoy was (and continues to be) in the process of developing a less expensive product to compete with

companies like Blue. As an employee of Blue, defendant is selling the same product (furniture for student housing) to the same types of buyers (colleges and universities); defendant testified that since becoming employed by Blue, he has contacted quite a few of the representatives who sell for Savoy and offered them information relative to selling for Blue.

The court also rejects defendant's argument that defendant's "ability to provide for his family and work in an industry in which he has familiarly (sic) and experience outweighs Savoy's interest in prohibiting [defendant] from competing in an adjacent furniture market." Defendant's introductory letter to Savoy of March 29, 2012, represents that he has "years of experience in strategic/business development managing multiple vendor, client and staff relationships, and managing P&L to achieve and exceed targeted objectives," but that he "will have a small learning curve in regards to the commercial furniture field," thus belying his implication that he will be "put out of work" if he is not permitted to continue employment with Blue. And, as already indicated, the court finds the markets to be co-extensive, not adjacent.

It should be noted, in conclusion, that in the agreement, defendant agreed that "the geographical and time limitations set forth [in the agreement] are reasonable and properly required for the adequate protection of Savoy's interests" and that "the remedy at law for any breach by him of the covenants" would be "inadequate" and that Savoy would "have the right to enjoin" him from activities in violation thereof. Defendant is thus estopped from arguing to the contrary.

## ORDER

And now, this day of May 2014, for the foregoing reasons, the petition for preliminary injunction is hereby granted. Until further order of court or agreement of the parties, (a) defendant is precluded from working in direct competition of Savoy & Son, Inc. within the United States (and world-wide as relates to U.S. military bases), and (b) defendant is precluded from disclosing any confidential, proprietary information or trade secrets of John Savoy & Son, Inc. to any third party. This order shall be effective upon the posting by Savoy & Son, Inc., with the prothonotary of Lycoming County, of a bond in the amount of (twenty thousand dollars) $20,000.00.